**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**ORANGEBURG DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER WEST, | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:13-cv-00981-DCN |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| DIRECTOR WILLIAM R. BYARS, JR., | ) | |
| WARDEN CECILIA REYNOLDS, | ) | |
| ASSOCIATE WARDEN JERRY | ) | |
| WASHINGTON, MAJOR DARREN | ) | |
| SEWARD, CAPTAIN DANIEL DUBOSE, | ) | |
| LIEUTENANT CLAUDE POWELL, | ) | |
| SERGEANT KRISTOPHER SWEET, | ) | |
| CORPORAL JEREMY TARLTON, | ) | |
| OFFICER LAWRENCE TAYLOR, and | ) | |
| NURSE LUANNE MUNGO, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on Magistrate Judge Kaymani D. West's Report and Recommendation ("R&R") that this court grant defendants' motion for summary judgment. Plaintiff Christopher West ("West") filed written objections to the R&R. For the reasons set forth below, the court rejects the magistrate judge's recommendation that West failed to exhaust his administrative remedies, but grants summary judgment as to all defendants after addressing the merits of West's claims.

## I.  BACKGROUND

West was an inmate at Kershaw Correctional Institute ("KCI") when the alleged incidents occurred. Compl. 1.[1] West alleges that he began to hear sarcastic and vulgar comments directed at him while going through the bus terminal. Id. at 5. West was then placed in a "small holding area" where his restraints were to be removed. Id. West states

---

[1] Unless otherwise noted, the following background derives from West's allegations in his complaint.

that at that time, defendant Officer Lawrence Taylor ("Officer Taylor") "started utilizing the restraints unappropriately [sic]" and that West then "calmly asked, after seeing it was purposely done, for him to stop . . . ." Id. West then alleges that defendant Sergeant Kristopher Sweet ("Sergeant Sweet") "joined and started to do the same[,]" which led West to "calmly with equanimity [get] louder with them as [the] pain increased." Id.

West claims that he "grew louder to cause attention." Id. Having successfully drawn attention to himself, West states that he indicated to the other officers that he did not seek trouble, but rather wanted to inform other inmates that Sergeant Sweet and Officer Taylor were "purposely . . . utilizing [the restraints] as weapons to cause pain through aggressively pulling them into skin and jerking them to cause same type [sic] of action." Id. West states that defendant Lieutenant Claude Powell ("Powell") and Officer Taylor subsequently escorted him to the Special Management Unit ("SMU") where Sergeant Sweet began to "resume same tactic with . . . deleterious purpose." Id. Again, West loudly stated, "for other inmates to hear," that defendants were purposely causing him pain. Id. At that moment, Sergeant Sweet pepper sprayed West in his cell. Id. West states that this action was "condoned by others" and was "malicious and sadistically done . . . ." Id.

Sergeant Sweet completed an incident report and a use of force report detailing the event. Defs.' Mot. Ex. 2 at 13. According to the incident report, West became "verbally and physically aggressive" when officers put West in the handcuffs and lead chains, which were applied while West's belly chain was removed. Id. In response to West's resistance, Sergeant Sweet administered a one to two second burst— approximately 52 grams—of chemical munitions directed towards West. Id. Sergeant

Sweet also completed a use of force report that stated that West was afforded medical care after the incident. Id. at 14. Both the incident report and the use of force report state that Sergeant Sweet's application of chemical munitions gave him the opportunity to exit the room and made West cease his behavior. Id. at 13–14; see also Sweet Aff. ¶ 3. West became compliant with all directives and was given the opportunity to shower off. Defs.' Mot. Ex. 2 at 14. Following the incident, West was charged with and later convicted of threatening to inflict harm on an employee. Id. at 6, 13, 15.

West states that after the initial incident described above, he "tried to get seen about [being pepper sprayed]" but Officer "Taylor came and peppered sprayed [sic]" him again. Compl. 5–6. While no incident report was filed, South Carolina Department of Corrections ("SCDC") records indicate that Officer Taylor was performing security checks in SMU when West "began kicking and banging on his cell door." Defs.' Mot Ex. 2 at 16. The SCDC records further indicate that Officer Taylor gave West several directives to stop his behavior, but West refused. Id. Officer Taylor then administered a one to two second burst—approximately 33 grams—of chemical munitions into the service flap of West's cell. Id. at 16, 17. The SCDC records indicate, and West does not dispute, that West was given an opportunity to decontaminate and provided medical care for his swollen eyes once his behavior ceased. Id. at 16; Compl. 6.

West filed the present action in the South Carolina Court of Common Pleas for Richland County, South Carolina on January 7, 2013, alleging that defendants violated his constitutional rights under the Eighth and Fourteenth Amendments. Specifically, West contends that on March 28, 2011, one or more defendants: used excessive force during his transfer from Turbeville Correctional Institute to KCI; acted with deliberate

3

indifference to his medical needs; and failed to protect him.  Defendants filed a notice of

removal on April 12, 2013.  West filed an amended complaint on May 13, 2013.  On June

13, 2014, defendants filed a motion for summary judgment.  On September 9, 2014, West

filed a response to the motion for summary judgment.  Defendants filed a reply on

October 6, 2014.  The magistrate issued an R&R on November 11, 2014, finding that

West failed to exhaust his administrative remedies and recommending that defendants'

motion for summary judgment be granted.  West filed an objection to that R&R on

December 8, 2014, and defendants replied on December 22, 2014.   West then filed a sur-

reply on January 12, 2015.  The matter has been fully briefed and is now ripe for the

court's review.

## II.  STANDARDS

### A.    Objections to R&R

This court is charged with conducting a de novo review of any portion of the

magistrate judge's R&R to which specific, written objections are made.  28 U.S.C. §

636(b)(1).  A party's failure to object is accepted as agreement with the conclusions of

the magistrate judge.  See Thomas v. Arn, 474 U.S. 140, 149–50 (1985).  In absence of a

timely filed objection to a magistrate judge's R&R, this court need not conduct a de novo

review, but instead must "only satisfy itself that there is no clear error on the face of the

record in order to accept the recommendation."  Diamond v. Colonial Life & Acc. Ins.

Co., 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's

note).  West filed his objection to the magistrate judge's R&R on December 2, 2014.

The recommendation of the magistrate judge carries no presumptive weight, and

the responsibility to make a final determination rests with this court.  Mathews v. Weber,

4

423 U.S. 261, 270–71 (1976).  This court may accept, reject, or modify the report of the magistrate judge, in whole or in part; may receive further evidence; or may recommit the matter to him with instructions for further consideration.  28 U.S.C. § 636(b)(1).

### B.    Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in his favor.  Id. at 255.

### C.    Pro Se Plaintiff

West is proceeding pro se in this case.  Federal district courts are charged with liberally construing complaints filed by pro se litigants to allow the development of a potentially meritorious case.  See Hughes v. Rowe, 449 U.S. 5, 9–10 (1980).  Pro se complaints are therefore held to a less stringent standard than those drafted by attorneys. Id.  Liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a cognizable claim.  See Weller v. Dep't of Soc. Servs., 901 F.2d 387, 390–91 (4th Cir. 1990).

### III.   DISCUSSION

The magistrate judge recommended the court grant defendants' motion for summary judgment, finding that West failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA").  R&R 7.  The magistrate judge found that "[t]he only independent evidence presented to the court indicates that [West] did not file a Step 1 grievance concerning the allegations in his Complaint."  Id. at 6.  West objects to the magistrate judge's finding that he failed to exhaust his administrative remedies, claiming that he attempted to exhaust his administrative remedies by filing a Step 1 grievance on April 11, 2011.  Pl.'s Objections 3, 4.

As an initial matter, defendants contend that West's objections were untimely.  Pursuant to 28 U.S.C. §636(b)(1), West's objections were due fourteen days after "being served with a copy" of the R&R.  The date of service is the date the R&R was mailed to West.  Fed. R. Civ. P. 5(b)(2)(C).  The R&R was mailed to West on November 7, 2014.  When adding the three days afforded when service is by mail, Fed. R. Civ. P. 6(d), West's objections were due November 24, 2014.  However, West did not file his objections until December 2, 2014, as evidenced by his sworn affidavit attached as an exhibit to his objections and dated December 1, 2014.  Further, the affidavit states that "[t]he attached documents . . . [are] being served to the clerk's office . . . the day after notarized below."  Therefore, West's objections were untimely.

Because West's objections were untimely, the court need not conduct a de novo review but must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005).  However, on review of the record, the court finds clear

error in the magistrate judge's finding that West failed to exhaust his administrative remedies.

### A.    Exhaustion of Administrative Remedies

Under § 1997e(a) of the PLRA "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 84 (2006).  However, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it."  Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008); see also Stenhouse v. Hughes, No. 9:04-cv-23150, 2006 WL 752876, at *2 (D.S.C. Mar. 21, 2006) ("[E]xhaustion may be achieved in situations where prison officials fail to timely advance the inmate's grievance or otherwise prevent him from seeking his administrative remedies.").  Accordingly, courts are "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials."  Hill v. O'Brien, 387 F. App'x 396, 400 (4th Cir. 2010) (unpublished) (citing Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007)).  "When prison officials prevent inmates from using the administrative process, the process that exists on paper becomes unavailable in reality".  Id. (quoting Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006)).  Defendants have the burden of establishing that a prisoner has failed to exhaust his administrative remedies.  Anderson v. XYZ Corr. Health Servs., 407 F.3d 674 (4th Cir. 2005).

In Hill, the Fourth Circuit overturned a district court's holding that an inmate failed to exhaust administrative remedies.  387 F. App'x 396.  The court found that there

7

was a genuine issue of material fact as to whether the inmate exhausted his administrative remedies when the inmate alleged that prison officials refused to provide necessary forms, destroyed them, or failed to respond. Id. at 400–01. Importantly, the court recognized the inmate's high volume of previous filings, finding that "the fact that [the inmate] successfully filed many grievances in the past suggest[ed] that [the inmate] [was] familiar with the requirements of the administrative process and [was] not purposefully attempting to evade them." Id. at 401.

West claims to have properly utilized the administrative remedies available to prisoners in an effort to "try and rectify" the incidents of March 28, 2011. Compl. 10. West states that on April 11, 2011, he delivered two separate Step 1 grievances outlining the incidents of March 28, 2011 involving Sergeant Sweet and Nurse Mungo to Officer Simms ("Simms") of A-1 shift, but that his grievances were not processed. Compl. 9, 10. West states that SMU prisoners are required to place grievances in the hands of officers because these prisoners "have no freedom to take grievances to [the] grievance box as population prisoners." Pl.'s Reply to Objections 2.

In response, defendants argue that West failed to exhaust his administrative remedies. In support of their argument, defendants submit the affidavit of Ann Hallman ("Hallman"), Branch Chief of Inmate Grievances at SCDC. Defs.' Mot. Ex. 3. Notably, the magistrate judge relied on Hallman's affidavit to conclude that West failed to file any Step 1 grievances related to the incidents of March 28, 2011. R&R 6. Hallman states that the only grievance received from West concerned the disciplinary proceedings that followed the March 28, 2011 incident.[2] Hallman Aff. ¶ 4. Hallman further states that

---

[2] According to Hallman, the only grievance West submitted that was remotely related to the March 28, 2011 incidents was an April 22, 2011 Step 1 grievance in which West disputed his conviction that stemmed

West did not file any grievances related to alleged excessive force or failure to protect regarding an incident on March 28, 2011.  Id. at ¶ 5.

In support of his claims, West attached a handwritten log that outlines more than 100 different documents submitted between March and July of 2011.  Compl. Ex. 4.  The chart includes the date submitted, the officer or person who was given the document, the type of paperwork, the date returned, the shift, and any comments.  Id.  The April 11 entry states that Officer Simms was given two grievances relating to an incident with Sergeant Sweet and Nurse Mungo on March 28, 2011, but that they were never returned.  Id. at 3.  West's claim is also supported by two staff requests, one filed on May 8, 2011 and another filed on June 5, 2011, inquiring about the status of the two grievances West claims to have filed relating to the March 28, 2011 incident.  Compl. Ex. 4 at 9, 16; Pl.'s Objections Ex. 2 at 2.  The two staff requests are included in the record and are also referenced in West's personal notes.  Although the responses to the staff requests state that prison staff never received grievances relating Sergeant Sweet or Nurse Mungo, the fact that the grievances were never received by the grievance coordinated does not itself negate West's claims that he gave the grievances to Officer Simms.  Notably, neither the magistrate judge nor the defendants directly address West's allegation that he placed the grievances in Officer Simms's hand; nor do they address West's personal notes attached to his complaint.  Further, defendants did not provide an affidavit from Officer Simms disputing or denying West's allegation, nor is there any evidence in the record outlining the procedure for SMU prisoners to file grievances.

---

from his charge for threatening to inflict harm on an employee.  Hallman Aff. ¶ 5; Defs.' Mot 6.  The grievance did not reference any of the allegations of March 28, 2011, but only appealed his conviction stemming from disciplinary hearing.  Id.  On May 17, 2011, the warden issued a response, denying the grievance.  Id.  On May 20, 2011, West filed a Step 2 Grievance appealing the warden's decision, which was later denied.  Id.

Viewing the evidence in the light most favorable to West, the court finds that there is a genuine issue of material fact as to whether West properly filed a Step 1 grievance regarding the March 28, 2011 incidents with Sergeant Sweet and Nurse Mungo.  West's claim that he attempted to file grievances relating to the March 28, 2011 incident on April 11, 2011 is supported by West's December 1, 2014 affidavit, his personal notes attached to his complaint, and the staff requests attached to his objections and his complaint.  See West Aff.; Pl.'s Reply to Objections 2.  Therefore, summary judgment is not appropriate on the basis that West failed to exhaust his administrative remedies.  Because the court rejects the magistrate judge's finding that West failed to exhaust his administrative remedies, the court will examine and address the merits of the defendants' additional arguments supporting their motion for summary judgment.[3]

## B.    Excessive Force

West alleges that he was improperly restrained while being transferred to KCI, and that Sergeant Sweet used excessive force against him by pepper spraying him with excessive amounts of chemical munitions.  Compl. 5-6.  West claims that the "maliciously and sadistically [sic] use of force to intentionally cause harm" violated his rights and constituted cruel and unusual punishment under the Eighth Amendment.[4]  In

---

[3] The court deems exhausted only West's claims against Sergeant Sweet and Nurse Mungo.  Although the evidence creates a genuine issue of fact as to whether he tried to file grievances relating to the March 28, 2011 incident about Sergeant Sweet and Nurse Mungo, there is no evidence that West tried to file grievances regarding any of the other named defendants.  Thus, the court adopts the R&R in part and grants summary judgment in favor of defendants Director William R. Byars, Jr., Warden Cecelia Reynolds, Associate Warden Jerry Washington, Major Darren Seward, Captain Daniel Dubose, Lieutenant Claude Powell, Corporal Jeremy Tarlton, and Officer Lawrence Taylor for failure to exhaust administrative remedies under the PLRA.

[4] In his complaint, West specifically invokes the protections of the Eighth and Fourteenth Amendments.  However, the Supreme Court has explained that, after conviction, it is the Eighth Amendment—not the Fourteenth—that protects prisoners against the excessive use of force.

After conviction, the Eighth Amendment serves as the primary source of substantive protection in cases where the deliberate use of force is challenged as

response, defendants argue that Sergeant Sweet used the minimum force necessary to restore discipline and that West was permitted to shower, given medical treatment, and did not suffer any injuries.

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In determining whether a complaint states an Eighth Amendment claim that a defendant used excessive force, the core judicial inquiry does not concern the extent of the injury but rather the nature of the force: "specifically, whether it was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'" Wilkins v. Gaddy, 559 U.S. 34, 39 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1993)).

To prove a claim that prison officials violated his constitutional rights through the excessive use of force, an inmate must satisfy two requirements. First, a claimant must meet a "heavy burden" to satisfy the subjective component, Whitley v. Albers, 475 U.S. 312, 321 (1986), for which the claimant must show that the force used by the corrections officers "inflicted unnecessary and wanton pain and suffering." Hudson, 503 U.S. at 6. In the context of a prison disturbance, this question "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Id. (quoting Whitley, 475 U.S. at 320–21). Factors relevant to this determination include: (1) the need for application of force; (2) the relationship between that need and the force used; (3) the threat reasonably

---

excessive and unjustified. Any protection that "substantive due process" affords convicted prisoners against excessive force is, we have held, at best redundant of that provided by the Eighth Amendment.

Graham v. Connor, 490 U.S. 386, 399 n.10 (1989) (internal quotations omitted). As a result, the court analyzes West's claims only under the guidelines of the Eighth Amendment.

perceived by the responsible officials; and (4) any efforts made to temper the severity of a forceful response.  Whitley, 475 U.S. at 320–21.

Second, the claimant must meet the objective component, which concerns whether the alleged wrongdoing is objectively "harmful enough" to establish a constitutional violation.  Hudson, 503 U.S. at 2.  "The core judicial inquiry . . . [is] not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain and restore discipline, or maliciously and sadistically to cause harm."  Wilkins, 559 U.S. at 37 (internal quotation marks omitted).  The objective component is not as demanding because "when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . ."  Id. (internal quotation marks omitted).  The Supreme Court has stated that courts should not substitute their judgment for that of a prison official who must decide, in the heat of the moment, the appropriate level of force, and should also recognize that prison officials work in an environment that always has the potential for violence and unrest.  Whitley, 475 U.S. at 321–22 (internal quotations omitted).

As compared to other forms of force, the limited application of chemical munitions is a mild response, and as such, its initial application represents a tempered response by prison officials.  Williams, 77 F.3d at 763.  Further, courts recognize that a limited application of chemical munitions may be a "much more humane and effective" response than "a flesh to flesh confrontation with an inmate."  Id. (quoting  Soto v. Dickey, 744 F.2d 1260, 1262 (7th Cir. 1984)).  Moreover, prompt washing of the affected area will usually provide immediate relief from pain.  Id.

Because "[i]t is generally recognized that 'it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain,'" the Fourth Circuit "has closely scrutinized the use of tear gas or mace . . . in correctional facilities." Williams, 77 F.3d at 763 (quoting Soto, 744 at 1270). In doing so, courts recognize that "even when properly used, such weapons 'possess inherently dangerous characteristics capable of causing serious and perhaps irreparable injury to the victim.'" Id. (quoting Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984)). Thus, "although it is not per se unconstitutional for guards to spray mace at prisoners confined in their cells, it is necessary to examine the 'totality of the circumstances, including the provocation, the amount of gas used, and the purposes for which the gas is used [to] determin[e] the validity of the use of tear gas in the prison environment.'" Id. (quoting Bailey v. Turner, 736 F.2d 963, 969 (4th Cir. 1984)).

Here, Sergeant's Sweet's use of chemical munitions was justified and did not constitute excessive force. The incident report compiled by Sergeant Sweet after the initial incident states that West became "verbally and physically aggressive when the handcuffs were applied," which compelled Sergeant Sweet to administer the chemical munitions. Defs.' Mot. Ex. 2 at 13. At that time, Sergeant Sweet administered a one to two second burst—approximately 52 grams—of chemical munitions directed towards West. Id. The record reveals that West was charged with and found guilty of threatening to inflict harm upon an employee, indicating the legitimacy of the threat to the officer. Id. at 15. Therefore, the evidence shows that Sergeant Sweet was reasonable in perceiving a threat and that the use of force was justified.

Moreover the use of force report states that West was given an opportunity to shower and rinse his eyes, a contention that West does not dispute. Id. at 14. West was escorted to Nurse Mungo where he received medical treatment for his swollen eyes. Id. at 16. According to West's medical records and Nurse Mungo's affidavit, after receiving medical treatment, West was instructed to continue flushing his eyes with cool water upon returning to his cell. Mungo Aff. ¶ 5; Defs.' Mot. Ex. 9 at 10. Finally, Nurse Mungo asserts that West did not have any actual injuries that were serious or life-threatening on March 28, 2011; that West did not present a risk of serious harm to his health or well-being on March 28, 2011; and that West's complaints were appropriately addressed and treated.[5] Mungo Aff. ¶¶ 5–6. West fails to present any evidence that contradicts Nurse Mungo's statements or his medical records.

Further, West has not shown that the force utilized against him was excessive or that the prison officials acted maliciously or sadistically. The court notes that no evidence, other than West's self-serving allegations, supports a claim of excessive force. See, e.g., Riley v. Honeywell Tech. Solutions, Inc., 323 F. App'x 276, 278 (4th Cir. 2009) (holding that plaintiff's "self-serving contentions" that he was treated unfairly "were properly discounted by the district court as having no viable evidentiary support"); Nat'l Enters., Inc. v. Barnes, 201 F.3d 331, 335 (4th Cir. 2000) (holding that a self-serving affidavit was insufficient to survive summary judgment); King v. Flinn & Dreffein Eng'g Co., 2012 WL 3133677, at *10 (W.D. Va. July 30, 2012) (finding no genuine issue of material fact where only evidence was "uncorroborated and self-

---

[5] West's medical records indicate that when West reported to medical, he complained of shoulder pain from an incident that occurred at his prior facility before his transfer to KCI. Def.'s Mot. Ex. 9, 10. West does not dispute that the shoulder injury occurred prior to his transfer to KCI. Nurse Mungo instructed West to submit a staff request to be seen about his shoulder. Id.

14

serving" testimony (citing <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1061 (9th Cir. 2002))).

Moreover, because there is absolutely no evidence that West suffered any injury beyond swollen eyes, no reasonable jury could find that the force used against West was more than "nontrivial" or "<u>de minimis</u>."  <u>See</u> <u>Rutledge v. Porter</u>, No. 4:11-cv-272, 2013 WL 2285936 (D.S.C. May 23, 2013) (finding that because plaintiff failed to allege any injury, there was no genuine issue of fact as to whether constitutionally excessive force was used against the plaintiff); <u>Vicks v. Knight</u>, 380 F. App'x 847, 852 (11th Cir. 2010) (holding that because a "reasonable factfinder could not believe that [the plaintiff] suffered any injury," it therefore "could not reasonably infer that [the defendant] used anything more than a <u>de minimis</u> amount of force"); <u>Tate v. Brandon</u>, 2011 WL 1123732, at *5 (M.D. Ga. Mar. 4, 2011) ("If there is no evidence of injury to corroborate the inmate's allegations of excessive force, a motion for summary judgment may be granted in favor of the prison officials." (citing <u>Vicks</u>, 380 F. App'x at 851)); <u>Clark v. Watson</u>, 2013 WL 3984218, at *4 (E.D. La. July 31, 2013) (holding that the "complete absence of injury . . . indicates that the 'forceful' force [defendant] used was not excessive"); <u>compare</u> <u>Thompson v. Shelton</u>, 541 F. App'x 247, 250 (4th Cir. 2013) (vacating district court's grant of summary judgment on excessive force claim where plaintiff alleged various injuries that were "supported at least in part" by medical records).

Lastly, while West claims that the use of 52 grams of pepper spray was excessive, courts have found the use of much larger amounts of chemical munitions to be constitutionally sound.  <u>See, e.g.</u>, <u>Green v. Williams</u>, No. 4:13-cv-1019, 2014 WL 6666638, at *8 (D.S.C. Nov. 24, 2014) (granting summary judgment on an excessive

force claim when prison officials used a total of 248 grams of chemical munitions);
Briggs v. S.C. Dep't of Corr., No. 9:13-cv-1348, 2014 WL 1278173, at *17 (D.S.C. Mar. 27, 2014) (dismissing excessive force claim when over 140 grams of chemical munitions were sprayed into a cell with two inmates); Kemp v. Drago, No. 1:12-cv-1481, 2013 WL 4874972, at *2 (D.S.C. Sept. 11, 2013) (granting summary judgment on an excessive force claim when 72 grams of chemical munitions were used).

Therefore, after balancing the Whitley factors and viewing the evidence in a light most favorably to West, this court finds that the defendants acted in good faith to restore order to KCI.  Defendants' motion for summary judgment is granted as to West's excessive force claim.

### C.     Deliberate Indifference to Medical Needs

West next claims that defendants were deliberately indifferent to his serious medical needs and injuries.  Compl. 6.  Specifically, West claims that he was not seen when taken into the medical room but was "negated medical treatment by defendant [Nurse] Mungo who never checked not gave time to state complaint but given asperity and aspersion and dismissed [sic]."  Pl.'s Resp. 2.  West states that he was permitted to rinse his eyes from the pepper spray, and that he subsequently requested a nurse "but was given a shower . . . ."  Compl. 6.  In response, defendants claim that West was provided medical care and did not suffer any injury.  Defs.' Mot. 21.

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned."  Williams, 77 F.3d at 761.  In Estelle v. Gamble, the Supreme Court recognized a federal cause of action for deliberate indifference to serious medical needs.  429 U.S. 97, 104 (1976).  The Court wrote that the claim is cognizable

"whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id.  "Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Id. at 104–05; see also Farmer v. Brennan, 511 U.S. 825, 834 (1994) (describing actions under 42 U.S.C. § 1983 against state officials as "counterparts" to Bivens actions against federal officials).

A plaintiff must satisfy both a subjective and an objective component to show the violation of a constitutional right. Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).  To prevail on a claim of constitutionally inadequate medical care, a plaintiff must demonstrate "that the officers acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)." Id. (citing Estelle, 429 U.S. at 104).

First, a plaintiff must show that the injury was objectively serious. Farmer, 511 U.S. at 834.  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (internal citation omitted).  Second, a plaintiff must also satisfy the subjective component by proving a deliberate indifference. Id.  An officer is deliberately indifferent only when he "knows of and disregards" the risk posed by the serious medical needs of the inmate. Farmer, 511 U.S. at 837.  The Fourth Circuit has identified two aspects of an official's state of mind that must be shown to satisfy the subjective component.  "First, actual knowledge of the risk of harm to the inmate is required." Iko, 535 F.3d at 241 (citing Young v. City of Mt. Ranier, 238 F.3d 567, 575–76 (4th Cir. 2001)) (emphasis in original); see also Parrish ex

rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) ("It is not enough that the

officers should have recognized [a substantial risk of harm].").  A factfinder may

conclude that an officer knew of a substantial risk from the very fact that the risk was

obvious, but it is not enough that a reasonable officer would have found the risk to be

obvious.  Parrish, 372 F.3d at 303 (internal citations omitted).  The risk of injury must be

so "obvious that the fact-finder could conclude that the [officer] did know of it because

he could not have failed to know of it."  Id. (internal quotations and citations omitted)

(emphasis in original).  Second, the officer "must also have 'recognized that his actions

were insufficient' to mitigate the risk of harm to the inmate arising from his medical

needs."  Iko, 535 F.3d at 241 (citing Parrish, 372 F.3d at 303) (emphasis in original).  A

factfinder may conclude that the official's response to a perceived risk was so patently

inadequate as to justify an inference that the official actually recognized that his response

to the risk was inappropriate under the circumstances.  Parrish, 372 F.3d at 303.

 "Deliberate indifference is a very high standard—a showing of mere negligence

will not meet it."  Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999); see also Whitley

v. Albers, 475 U.S. 312, 319 (1986) (holding that deliberate indifference requires "more

than ordinary lack of due care for the prisoner's interests or safety").  Rather, a medical

provider's actions must be "so grossly incompetent, inadequate, or excessive as to shock

the conscience or to be intolerable to fundamental fairness."  Jackson v. Sampson, 536 F.

App'x 356, 357 (4th Cir. 2013) (citing Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir.

1990), rev'd on other grounds, Farmer, 511 U.S. at 837).  Further, "an inadvertent failure

to provide adequate medical care" does not rise to the standard necessary to allege an

Eighth Amendment violation.  Estelle, 429 U.S. at 107; see also Cambron v. Riley, No.

3:10-cv-2334, 2011 WL 6937540, at *3 (D.S.C. Oct. 26, 2011) ("Unless medical needs were so serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail.").

When viewed in the light most favorable to West, there is no genuine dispute as to whether West received adequate medical care. First, there is no evidence in the record that West suffered from an objectively serious medical need. West's medical records indicate, and West does not dispute, that he reported to Nurse Mungo with swollen eyes and shoulder pain. West stated that his shoulder injury occurred during an incident prior to his transfer to KCI.[6] Mungo Aff. ¶ 5; Defs.' Ex. 9 at 10. Under these circumstances, shoulder pain and swollen eyes do not constitute objectively serious medical needs.

Further, West has failed to allege facts to establish that Nurse Mungo was deliberately indifferent to his medical needs. To the contrary, the record indicates that West received medical treatment for his swollen eyes. After West was permitted to shower, Nurse Mungo instructed West to continue to rinse his eyes with cool water once he returned to his cell and to send a staff request regarding his shoulder pain. Id. Finally, Nurse Mungo asserts that West did not have any actual injuries that were serious or life-threatening on March 28, 2011; that West did not present a risk of serious harm to his health or well-being on March 28, 2011; and that West's complaints were appropriately addressed and treated. Mungo Aff. ¶¶ 5–6. According to West's own complaint, after he was pepper sprayed, he was allowed to rinse his eyes to relieve the burning sensation,

---

[6] West was advised by defendant Mungo to "send a request to staff to medical concerning his shoulder complaints." Mungo Aff. ¶ 5. West was seen the following day by medical staff concerning his shoulder, where he states that his shoulder "is better today." Defs.' Mot. Ex. 9 at 9. This visit is further indication of a non-serious medical need.

was given a shower to relieve the burning sensation to his skin, and, upon request, he was taken to be treated by medical staff.  Compl. 6; Pl.'s Resp. 7.[7]  Therefore, there is no evidence in the record that Nurse Mungo was deliberately indifferent to West's medical needs.

For the aforementioned reasons, defendants' motion for summary judgment is granted as to West's deliberate indifference to medical needs claim.

### D.     Failure to Protect

To the extent that West's claim for failure to protect is addressed to Sergeant Sweet, his claim fails.  The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned."  Williams, 77 F.3d at 761.  The guarantees of the Eighth Amendment extend to protect inmates "from physical harm at the hands of fellow inmates resulting from the deliberate or callous indifference of prison officials to specific known risks of such harm."  Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987) (citing Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir. 1979)).  The same standard that courts apply to denial of medical care claims—deliberate indifference—is applied to failure to protect claims.  Young v. City of Mount Ranier, 238 F.3d 567, 575 (4th Cir. 2001) (stating that a failure to protect claim "is no different in any meaningful respect

---

[7] Moreover, West's mere disagreement with the course of treatment he received does not raise a claim for deliberate indifference.  See Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010).  "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice."  Thomas v. Anderson City Jail, No. 6:10-cv-3270, 2011 WL 534392, at *1 (D.S.C. Feb. 8, 2011) (quoting Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988)); see Brown v. Thompson, 868 F. Supp 326, 329 n.2 (S.D. Ga. 1994) ("Providing medical care is not discretionary . . . .  The type and amount of care, however, is purely discretionary.").  The fact that a prisoner believed he had a more serious injury or that he required better treatment does not establish a constitutional violation.  Wright v. Moore, No. 8:12-cv-1456, 2013 WL 4522903, at *6 (D.S.C. Aug. 26, 2013); see also Nelson, 603 F.3d at 449 ("[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." (internal quotation marks and citation omitted)); Walker v. Peters, 863 F. Supp. 671, 674 (N.D. Ill. 1994) ("[M]ere disagreements between doctor and patient about the course of treatment do not reflect 'deliberate indifference' on the part of the former, although if the patient is right he or she might have a common law (not a constitutional) claim for medical malpractice.").

from the indifferent-to-medical-needs claim and is governed by the same standard of

deliberate indifference").  The Supreme Court has stated:

> [W]e see no significant distinction between claims alleging inadequate
> medical care and those alleging inadequate "conditions of confinement."
> Indeed, the medical care a prisoner receives is just as much a "condition"
> of his confinement as the food he is fed, the clothes he is issued, the
> temperature he is subjected to in his cell, and the protection he is afforded
> against other inmates. There is no indication that, as a general matter, the
> actions of prison officials with respect to these nonmedical conditions are
> taken under materially different constraints than their actions with respect
> to medical conditions.

Wilson v. Seiter, 501 U.S. 294, 303 (1991).

"Deliberate indifference is a very high standard—a showing of mere negligence

will not meet it."  Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999); see also Whitley,

475 U.S. at 319 (holding that deliberate indifference requires "more than ordinary lack of

due care for the prisoner's interests or safety").  Under the deliberate indifference

standard, a plaintiff must satisfy both a subjective and an objective component to show

the violation of a constitutional right.  Iko, 535 F.3d at 241.  The objective component

requires a prisoner to "demonstrate a substantial risk of such serious harm resulting from

the prisoner's exposure to the challenged conditions."  De'Lonta v. Angelone, 330 F.3d

630, 634 (4th Cir. 2003).  "The subjective component of an Eighth Amendment claim

challenging the conditions of confinement is satisfied by a showing of deliberate

indifference by prison officials."  Id.  Deliberate indifference "requires that a prison

official actually know of and disregard an objectively serious condition."  Id.

There is no evidence that Sergeant Sweet was deliberately indifferent to a

substantial risk of serious harm.  As stated above, there is no evidence in the record that

West actually suffered from an objectively serious injury or was in a substantial risk of

harm.  Therefore, defendants' motion for summary judgment as to West's claims for failure to protect is granted.

### E.        Qualified Immunity

The doctrine of qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Pearson v. Callahan, 555 U.S. 223, 231 (2009).

"To escape dismissal of a complaint on qualified immunity grounds, a plaintiff must (1) allege a violation of a right (2) that is clearly established at the time of the violation."  Evans v. Chalmers, 703 F.3d 636, 646 (4th Cir. 2012) (citing Pearson v. Callahan, 555 U.S. 223, 231 (2009)).  The two prongs of the qualified immunity test may be applied in any order.  Pearson, 555 U.S. at 236.  As discussed above, West failed to create a genuine issue of material fact to establish a constitutional violation.  See Stokes v. Hurdle, 393 F.Supp. 757 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976). Therefore, defendants are entitled to qualified immunity.

## IV.   CONCLUSION

Based on the foregoing, the court **REJECTS** the magistrate judge's R&R in part and **GRANTS** defendants' motion for summary judgment.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 31, 2015**
**Charleston, South Carolina**